

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00221-CV

_____

IN THE MATTER OF H.S.-O.

---

On Appeal from the 323rd District Court
Tarrant County, Texas
Trial Court No. 323-124411-24

---

Before Kerr, Bassel, and Birdwell, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

### I. Introduction

In two points, appellant H.S.-O.[1] complains that the duration of her pre- and post-disposition detention before transfer to the Texas Juvenile Justice Department (TJJD) violated her federal and state equal-protection guarantees and the Texas Equal Rights Amendment and that the denial of psychological treatment during the transfer's pendency violated her federal and state due-process rights.

The State argues that H.S.-O. has failed to assert any abuse of discretion by the juvenile court, that she has failed to set forth appellate arguments that comport with her arguments in the juvenile court, that the Separation of Powers doctrine deprives this court of jurisdiction to grant the requested relief, and that "[r]egardless of the merit . . . of [H.S.-O.'s] complaints, they provide no basis to modify or reverse the juvenile court's commitment order, which should therefore be affirmed in all respects." Because of these constraints, we agree with the State and affirm the juvenile court's judgment.

### II. Background

The State charged then-fifteen-year-old H.S.-O. with aggravated assault with a deadly weapon after she threatened someone with a piece of broken glass. *See* Tex. Penal Code Ann. § 22.02; Tex. Fam. Code Ann. § 51.03(a). After a probable-cause hearing at the end of September 2024, the juvenile court ordered H.S.-O. detained in

---

[1]We identify the child by her initials only. *See* Tex. Fam. Code Ann. § 56.01(j).

the Tarrant County Juvenile Justice Center; she was released to her father on pre-disposition probation at the end of October.

On November 21, 2024, pursuant to a plea bargain,[2] H.S.-O. confessed to the charged offense, and the juvenile court adjudicated her delinquent and placed her on twelve months' probation, to begin that day. Eighteen days later, H.S.-O. argued with her father and ran away from home, violating her probation. Upon her apprehension, she was detained again in the Tarrant County Juvenile Justice Center.

In January 2025, the State moved to modify H.S.-O.'s disposition based on the above probation violation and asked the juvenile court to commit her to TJJD. Four months later, at the hearing on the State's motion, the juvenile court made the required statutory findings and ordered H.S.-O. committed to TJJD. *See generally* Tex. Fam. Code Ann. § 54.04. The juvenile court's May 8, 2025 commitment order stated that H.S.-O. would be placed in the "custody of the Juvenile Probation Officer pending transportation to the proper [TJJD] facility."[3] *See id.* § 54.04(x)(1) (providing that a child "may be detained in an appropriate detention facility following disposition . . . pending . . . transportation of the child to the ordered placement").

---

[2]As part of the plea bargain, the State waived five of the six allegations in its petition regarding H.S.-O.'s delinquent conduct.

[3]The juvenile court held frequent probable-cause detention hearings in H.S.-O.'s case until it ordered her TJJD commitment. *See generally* Tex. Fam. Code Ann. §§ 53.02, 54.01 (describing pre-disposition detention proceedings).

H.S.-O.'s appellate counsel moved for a new trial, complaining that H.S.-O.'s pre-disposition detention and her prolonged detention after disposition violated her due-process and due-course-of-law rights under the federal and state constitutions and constituted cruel and unusual punishment. In his motion, he cited the Eighth and Fourteenth Amendments to the United States Constitution[4] and Article I, Sections 13 and 19 of the Texas constitution[5] but did not set out any specific equal-protection arguments. Instead, he complained that when the juvenile court sentenced H.S.-O. to TJJD, "the court knew or should have known that the female unit of this institution was[] not accepting residents and that it could be a prolonged period before [she] might be transferred," leaving her "without adequate psychiatric and psychological treatment that was essential for her well-being and safety."[6] *Cf. Downs v. State*, 244 S.W.3d 511, 518 (Tex. App.—Fort Worth 2007, pet. ref'd) (explaining that to prevail

---

[4]The Eighth Amendment prohibits infliction of cruel and unusual punishment, U.S. Const. amend. VIII, and the Fourteenth Amendment prevents a state from depriving any person of "life, liberty, or property, without due process of law," as well as from denying any person within its jurisdiction "the equal protection of the laws," U.S. Const. amend. XIV.

[5]Article I, Section 13 of the Texas constitution prohibits infliction of cruel and unusual punishment, provides for open courts, and states that every person "for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." Tex. Const. art. I, § 13. Article I, Section 19 of the Texas constitution states, "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." *Id.* art. I, § 19.

[6]The record reflects that H.S.-O. had a history of aggression and mental-health problems. Before the modification hearing in April 2025, the juvenile court ordered that she be held in restraints "to prevent any injury or disturbance by the child."

4

on an equal-protection claim, the complainant must establish that the government (1) treated her differently than other similarly situated parties and (2) treated her differently without a rational basis).

The juvenile court heard the motion in July, at which point H.S.-O. had been in detention for approximately 190 days, one-third of which occurred after the commitment order's entry. Jarreau Grant, Tarrant County Juvenile Services' Deputy Assistant Director of Institutional Services, testified that his office monitored the flow of detained female residents to TJJD. At the time of his testimony, the wait time was sixty to eighty days, and the wait list had been longer between February 2025 and June 2025. According to Grant, the longest wait for a female resident's transfer to TJJD was "[a] little over six months," and that particular resident had been transferred at the beginning of June. Nine female residents were still waiting for beds at TJJD, and of those nine, H.S.-O. was fifth in line.

During cross-examination, Grant testified that H.S.-O. had been detained in December 2024 but that the wait for her commitment to TJJD had begun only sixty to sixty-five days before the July hearing. The juvenile court asked Grant, "Has TJJD given you any indication on when their pick[-]ups will start to resume quicker?" Grant replied, "No, sir, they have not." Grant was not asked—and did not volunteer any testimony—about the wait time for similarly situated male detainees. *Cf. id.* Grant also stated that Tarrant County's juvenile detention was not set up to provide wraparound mental-health treatment for its residents.

During H.S.-O.'s testimony at the new-trial hearing, she agreed that at one point during her pre-commitment detention hearings, she had told the juvenile court, "Just send me to TJJD already." She attributed her misbehavior in detention to her mental-health issues; however, the record reflects that neither she nor her trial or appellate counsel had previously requested any mental-health evaluation or treatment or other services for her while she was being detained before or after the commitment order.

At the hearing's conclusion, H.S.-O.'s appellate counsel argued that it was "an abomination that she's here and waiting, and she hasn't received any kind of treatment for half a year," and that this constituted "a violation of her due process rights, her 5th Amendment rights,[7] and the Family Code."[8] Instead of requesting treatment for her, however, he instead asked that H.S.-O. be granted a new trial.

The juvenile court expressed concerns about not only the duration of H.S.-O.'s post-commitment-order detention but also its ability to do anything about the

---

[7]As pertinent here, the Fifth Amendment (which applies to the states through the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784, 787, 89 S. Ct. 2056, 2058 (1969)) provides that a person shall not "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

[8]H.S.-O.'s appellate counsel did not identify a specific Family Code section during the new-trial hearing, but in his appellate brief, he cites—as part of his equal-protection argument—Family Code Section 51.01, which states that one of the Juvenile Justice Code's public purposes is "to provide *treatment*, training, and rehabilitation that emphasizes the accountability and responsibility of both the parent and the child for the child's conduct." Tex. Fam. Code Ann. § 51.01(2)(C) (emphasis added).

detention, stating that after signing the commitment order, it no longer had the jurisdiction or authority to release her because she was "technically in the custody of TJJD. It is up to TJJD to take . . . physical possession of the person that they have legal possession over."[9]

H.S.-O.'s counsel agreed, stating that his appellate brief was "going to be chastising TJJD" and acknowledged that under the Separation of Powers doctrine, the juvenile court likely could not compel TJJD, as part of the State's executive branch, to do anything.[10] H.S.-O.'s counsel stated,

---

[9]*Cf.* Tex. Fam. Code Ann. § 56.01(b) ("The requirements governing an appeal are as in civil cases generally."); Tex. R. Civ. P. 329b(e) (stating that if a motion for new trial is timely filed, the trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment "until thirty days after all such timely[ ]filed motions are overruled, either by a written and signed order or by operation of law, whichever occurs first"). Thus, when it heard H.S.-O.'s new-trial motion, the juvenile court had plenary power over its commitment order. H.S.-O. raises no complaint arising from the trial court's determination of its jurisdiction.

[10]Neither party has addressed in this appeal whether the juvenile court retained jurisdiction under the Juvenile Justice Code to modify H.S.-O.'s post-commitment confinement conditions or order mental-health treatment for her while she awaited transfer. *Compare* Tex. Fam. Code Ann. § 51.04(a) (addressing juvenile court's "exclusive original jurisdiction" over Title 3 proceedings), *id.* § 51.12(b) (providing county juvenile board "shall control the conditions and terms of detention and detention supervision"), *and id.* § 51.12(c) (providing each juvenile-court judge and majority of the county juvenile board shall personally inspect pre-adjudication detention facilities and consider "the availability of health and mental[-]health services provided to facility residents"), *with id.* § 51.125(b) (setting out juvenile-court judge's and board's considerations for post-adjudication correctional facilities, including the factors under Section 51.12(c)(2)–(7)), *and id.* § 54.05(a) (stating that any disposition "except a commitment to [TJJD]" may be modified by the juvenile court until the child's relevant birthday or earlier discharge). *But see id.* § 51.20(a) ("At any stage of

7

My argument to the Court of Appeals is basically that TJJD is broken and it's violating her rights, and let them pick up from there. *It's not anything the court has done here.*[11] It's basically the system, and the fact that they are not providing services that should be available to her under juvenile law, under the Constitution, under due process, and under 8th Amendment, she's not being served. The State is failing her.[12] [Emphasis added.]

The juvenile court summarized its understanding of his argument as follows, "And so your argument would be akin to TDC, the adult system, not providing access to religious services, or special diet, or even adequate nutrition, or medical

---

the proceedings under this title, including when a child is initially detained in a . . . post-adjudication secure correctional facility, the juvenile court may, at its discretion . . . order a child [examined by a professional] . . . to determine whether the child has a mental illness . . . ."), *id.* § 55.02 ("For the purpose of initiating proceedings to order mental[-]health . . . services for a child as provided by this chapter, the juvenile court has jurisdiction of proceedings under Subtitle C or D, Title 7, Health and Safety Code."), *and id.* § 56.01(g) ("An appeal does not . . . release the child from the custody of [the juvenile court] or of the person, institution, or agency to whose care the child is committed, *unless the juvenile court so orders.*" (emphasis added)).

[11]*But see* Tex. Fam. Code Ann. § 56.01(i) (stating that an appellate court "may affirm, reverse, or modify the judgment or order, including an order of disposition or modified disposition, from which appeal was taken," "may reverse or modify an order of disposition or modified order of disposition while affirming the juvenile court adjudication that the child engaged in delinquent conduct or conduct indicating the need for supervision," or "may remand an order that it reverses or modifies for further proceedings by the juvenile court"). Under Section 56.01(i), then, in a direct appeal, we are limited to addressing challenges to the juvenile court's judgment or order.

[12]*See generally* Brittany Norman, *The State of the Texas Juvenile Justice Department*, 19 State Bar of Tex. Prof. Dev. Program, Annual Special Education, Child Welfare, and the Juvenile Justice System Course 9, 9.3–.7 (2023) (discussing TJJD's chronic understaffing and high staff turnover, which "has been considered a root cause of safety issues in TJJD's secure facilities for decades" and the inadequacies of the mental-health care provided therein).

needs." H.S.-O.'s appellate counsel replied, "I think it's even more than that . . . . I mean, we've got special circumstances here. We have a juvenile that's in need of psychiatric care, and the State is not providing it."[13] The juvenile court denied the motion.

## III. Discussion

H.S.-O. complains that because of the delay in transferring her to TJJD, her commitment violated federal and state due-process and equal-protection guarantees,

---

[13]Nothing in the record shows that anyone—H.S.-O., her trial or appellate counsel, her parents, the prosecutor, or the juvenile court—requested a mental-health evaluation or services for H.S.-O. during her pre- or post-commitment detention or filed an application for writ of habeas corpus in a trial court, an original proceeding in this court as to the juvenile court's actions or inactions, or an original proceeding in the supreme court as to TJJD's actions or inactions. *Cf.* Tex. Fam. Code Ann. § 51.06(b) (stating that an application for writ of habeas corpus brought by or on behalf of a person who has been committed to an institution under TJJD's jurisdiction and that attacks the validity of the judgment of commitment shall be brought in the county in which the court that entered the judgment of commitment is located), § 56.01(o) (stating that a juvenile's right to appeal does not limit her right to obtain a writ of habeas corpus); Tex. Gov't Code Ann. § 22.002(a), (c) ("Only the supreme court has the authority to issue a . . . writ . . . against any of the officers of the executive departments of the government of this state [except for the Governor] to order or compel the performance of a judicial, ministerial, or discretionary act or duty that, by state law, the officer or officers are authorized to perform."), § 22.221(b)–(d) (addressing intermediate court's writ power as to trial courts). Although H.S.-O.'s appellate counsel argues in his brief that "[i]t was not *her* obligation to ask for help if her needs were obvious," he disavowed any ineffective-assistance arguments during the new-trial hearing, makes none on appeal, and does not explain why he took no other action beyond requesting a new trial. [Emphasis added.]

9

the Texas Equal Rights Amendment,[14] and Family Code Section 51.01 and that the denial of psychological treatment during her transfer's pendency violated her federal and state due-process rights. H.S.-O. asserts that because she was denied equal protection and due process, she is entitled to a reversal of her disposition or to a new trial and her return to probation "where she may have an opportunity to receive the mental[-]health services to which she is entitled."[15] *See* Tex. Fam. Code Ann. § 51.01(2)(C).

## A. Preservation of error

To preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if not apparent from the request's, objection's, or motion's context. Tex. R. App. P. 33.1(a)(1)(A). If a party fails to do this, error is not preserved. *Bushell*

---

[14]*See* Tex. Const. art. I, § 3a ("Equality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin. This amendment is self-operative.").

[15]Contrary to most appeals of judgments modifying dispositions, H.S.-O. does not challenge the sufficiency of the evidence to support the juvenile court's findings, judgment, or order denying her motion for new trial. *Cf., e.g., Matter of A.K.*, No. 02-24-00144-CV, 2024 WL 4705124, at *1, *3–5 (Tex. App.—Fort Worth Nov. 7, 2024, no pet.) (mem. op.) (reciting evidentiary challenge and reversing judgment based on insufficient evidence). Further, H.S.-O. testified at her new-trial hearing that she had been honest when she pleaded true to committing aggravated assault with a deadly weapon and when she pleaded true to violating her probation, and her appellate counsel informed the juvenile court, "[W]e're in no way challenging the voluntariness of her pleas or her stipulation [of] true on the modification." *See* Tex. Fam. Code Ann. § 54.05(f) (stating that the evidentiary standard to modify a disposition to commit a child to TJJD is preponderance of the evidence).

*v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g). A party sufficiently preserves an issue for review by arguing the issue's substance, even if the party does not call the issue by name. *Li Li v. Pemberton Park Cmty. Ass'n*, 631 S.W.3d 701, 704 (Tex. 2021); *St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 214 (Tex. 2020). However, the complaint on appeal must match that presented in the trial court. *In re J.C.*, 594 S.W.3d 466, 473 (Tex. App.—Fort Worth 2019, no pet.); *see Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997).

An appellate court cannot reverse based on a complaint not raised in the trial court. *Banda*, 955 S.W.2d at 272; *see Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993) ("As a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal."); *see also Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (stating that "if a party fails to properly object to constitutional errors at trial, these errors can be forfeited," and that "[i]n determining whether a complaint on appeal comports with a complaint made at trial, we look to the context of the objection and the shared understanding of the parties at the time"); *Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004) ("Except for complaints involving systemic (or absolute) requirements, or rights that are waivable only, . . . all other complaints, whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a)."); *In re B.L.D.*, 113 S.W.3d 340, 350–51 (Tex. 2003) (noting that because juvenile-delinquency cases are "quasi-criminal," the criminal preservation rules apply).

Further, "[a]s a rule, we only decide constitutional questions when we cannot resolve issues on nonconstitutional grounds," and this rule is not optional. *Phillips v. McNeill*, 635 S.W.3d 620, 630 (Tex. 2021).

## B. Application

As set out above, in her first appellate point, H.S.-O. complains that she was "warehous[ed]" in violation of the state and federal equal-protection guarantees and the Texas Equal Rights Amendment. But in H.S.-O.'s new-trial motion, she did not raise these arguments. Instead, she raised due-process and due-course-of-law complaints under the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 13 and 19 of the Texas Constitution. And at the hearing, her counsel complained that the delay and lack of treatment violated "her due process rights, her 5th Amendment rights, and the Family Code," and "under the 8th Amendment."

Because H.S.-O.'s equal-protection and Equal Rights Amendment arguments were not raised in the juvenile court, they have not been preserved for our review, *see* Tex. R. App. P. 33.1(a)(1)(A); *Bushell*, 803 S.W.2d at 712; *J.C.*, 594 S.W.3d at 473, and we overrule this portion of H.S.-O.'s first point.

In the remainder of her first point and in her second point, H.S.-O. complains that denial of psychological treatment while in detention "and the prospect of inadequate treatment at the [TJJD]" is a violation of her due-process and due-course-of-law rights and Family Code Section 51.01, as is imposing a sentence that "resulted

in the warehousing of a mentally fragile female juvenile without punishment or services" because she was "detained pre-adjudication and post-disposition for an unreasonable period without the accountability of punishment or the benefit of treatment, training[,] or rehabilitation."

The record reflects that H.S.-O. had been diagnosed with disruptive mood disorder and oppositional defiance disorder and that before the new-trial hearing, neither H.S.-O. nor any other party presented a request for psychological treatment, a mental-illness determination, or any other services for her. At the new-trial hearing, her appellate counsel complained about delay but asked for a new trial instead of any of the above. *Cf.* Tex. Fam. Code Ann. § 55.11(a) ("On motion by a party, the juvenile court shall determine whether probable cause exists to believe that a child who is alleged by petition or found to have engaged in delinquent conduct . . . has a mental illness."), § 51.02(10) (defining "party" as "the state, a child who is the subject of proceedings under this subtitle, or the child's parent, spouse, guardian, or guardian ad litem"). Because preservation requires making the juvenile court aware of a complaint by "timely request, objection, or motion," and a ruling on that request, *see* Tex. R. App. P. 33.1, H.S.-O. has not preserved for our review her due-process, due-course-of-law, and Section 51.01 complaints pertaining to the juvenile court's purported denial of psychological treatment or other services while she was in pre- or

13

post-adjudication detention. We overrule the remainder of her first point and her second point.[16]

---

[16]Further, a juvenile's unsupported allegation that commitment constitutes cruel and unusual punishment based on the assumption that she would receive no treatment or rehabilitation from TJJD is insufficient to set aside a TJJD commitment order. 29 Tex. Prac., Juvenile Law & Practice § 22:2 (3d ed. 2025) (citing *In re D.L.S.*, 520 S.W.2d 442, 445 (Tex. App.—San Antonio 1975, no writ)). And under the Separation of Powers doctrine, we lack jurisdiction to order the juvenile court to compel *TJJD* to take any specific action. *See In re D.W.*, 249 S.W.3d 625, 635 (Tex. App.—Fort Worth) (en banc) (stating that the "Separation of Powers Clause is violated (1) when one branch of government assumes power more properly attached to another branch or (2) when one branch unduly interferes with another branch so that the other cannot effectively exercise its constitutionally assigned powers" and that "[a]ny attempt by one branch of government to interfere unduly with the powers of another is null and void"), *pet. denied*, 260 S.W.3d 462 (Tex. 2008). This is because TJJD is an executive agency. *See* Tex. Hum. Res. Code Ann. § 202.001(a).

TJJD's board, appointed by the Governor, *id.* §§ 202.001(a), 203.001(a), adopts "scheduling, housing, and placement procedures" to guide TJJD "in determining the most appropriate setting for the child based on rehabilitative needs while preserving due process rights," *id.* § 243.001(b), (d). TJJD may provide any psychiatric treatment necessary for a child with mental illness, *id.* § 244.006(a)(3), in conjunction with the Health and Human Services Commission (HHSC), the executive agency in charge of the care framework for minors at risk of placement in a facility operated by "an agency that is part of the juvenile justice system," Tex. Gov't Code Ann. § 547.0052(a). The legislature has tasked HHSC with monitoring implementation. *Id.* § 547.0053; *see also* Tex. Admin. Code § 380.8769(a) (establishing that TJJD may seek court-ordered mental-health services for youth with mental illness).

To handle TJJD complaints, the legislature created the Office of Independent Ombudsman, *see* Tex. Hum. Res. Code Ann. § 261.002, which, among other things, reviews the TJJD board's procedures, evaluates the delivery of services to children to ensure that their rights are fully observed, reviews complaints filed with the office "concerning the actions of [TJJD], juvenile probation departments, or other entities operating facilities in which" adjudicated juveniles are placed, and "investigate[s] each complaint in which it appears that a child may be in need of assistance from the independent ombudsman," *id.* § 261.101(a)(1)–(2). And the Texas Administrative Code establishes a grievance procedure "concerning the care, treatment, services, or

14

## IV. Conclusion

Having overruled both of H.S.-O.'s points as unpreserved, we affirm the juvenile court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: December 11, 2025

---

conditions provided for youth" under TJJD's jurisdiction; a grievance appeal will exhaust administrative remedies on the issues raised in the grievance "for purposes of appeal to the courts." Tex. Admin. Code §§ 380.9331(a), (d)(3), .9353(c), (f).